LOCKHART, In re. See Case No. 729.

LOCKHART (ATWOOD v.). See Case No. 642.

## Case No. 8,445.

### LOCKHART et al. v. HORN et al.

[1 Woods, 628.] [1]

Circuit Court, S. D. Alabama. April Term, 1871. [2]

FEDERAL COURTS—CITIZENSHIP OF PARTIES — DISMISSAL AS TO SOME—COURTS OPEN DURING WAR—STATUTE OF LIMITATIONS — BARRED CLAIM — STAY LAWS — DEPOSIT IN CONFEDERATE TREASURY.

1. The United States circuit court has no jurisdiction of a cause in which the complainants, and a part only of the defendants, are citizens of the same state, although such defendants voluntarily appear and answer without objecting to the jurisdiction.

[Cited in Sheldon v. Keokuk Northern Line Packet Co., 1 Fed. 792; Fisk v. Henarie, 32 Fed. 423.]

2. In such a case, the citizenship of the parties being disclosed by the bill, and no objection to the jurisdiction being made in limine, complainants may dismiss their bill as to the obnoxious defendants, and hold it as to the others.

3. The fact that civil war was raging in Alabama and other states, from the date of the act of secession in 1861, to the close of hostilities in 1865, is not sufficient ground for suspension of legal remedies and acts of limitations as between citizens of the Confederate States, the courts of the state having been open to all citizens of the Confederate States, and there being no law to prohibit them from resorting thereto.

4. Unless a country is actually occupied by hostile forces, and its laws and courts are suppressed, the courts are not allowed the discretion to decide when, and when not, the statutes of limitation are in operation, as between its own citizens only.

5. A law or ordinance which revives a claim already barred by the statute of limitations interferes with vested rights, and is unconstitutional.

6. All transactions, judgments, and decrees which took place in conformity with existing laws in the Confederate States, between citizens thereof during the late war, except such as were directly in aid of Rebellion, are good and valid; but those in aid of the Rebellion are void.

7. A deposit by an executor of a large sum of money, belonging to the estate, in the Confederate States depository, was a direct contribution to the resources of the Confederate States government, and the executor was refused a credit therefor in the settlement of the estate.

8. Where an executor might have collected the assets of the estate in good money before the war, but failed to do so, he was not allowed to discharge the balance found due from him, by payment in Confederate treasury notes.

In equity. Submitted on pleadings and evidence for final decree.

John T. Morgan, Wm. Boyles, and James W. Lapsley, for complainant.

L. Gibbons, S. J. Cumming, and T. H. Price, for defendant.

BRADLEY, Circuit Justice. The complainants, Sarah A. and Narcissa Lockhart, are daughters of John Horn, deceased. The defendants are his only son, John A. C. Horn, and his three other daughters, Frances L. Bryan, Eliza P. Nabors and Mary McPhail, and their husbands, and the administrator of Rebecca Horn, widow of the deceased.

The bill is filed for two objects: First. To contest the validity of the will of John Horn, deceased, admitted to probate in Marengo county, the 13th of September, 1858, at the instance of John A. C. Horn, executor and principal devisee. Second. To recover from said John the distributive share of said complainants in the estate of their father; or in case the will be not broken, to recover from him the balance due them as legatees under the will. The complainants are residents of Texas; the defendants are all residents of Alabama, except Mary McPhail and her husband, Wm. McPhail, who reside in Texas. The relief sought is sought entirely against John A. C. Horn; but the other defendants are made parties, because they have an interest in the estate. Wm. McPhail and wife, though not served with process, have voluntarily appeared and put in an answer admitting the truth of the statements made by the bill, and praying a decree for Mary McPhail's share of the estate. The first aspect of the bill is founded on a statute of Alabama, which, after prescribing the mode in which a will may be propounded and contested, enacts that any person interested in a will, who has not contested it as provided by the act, may, at any time within five years after the admission of the will to probate, contest its validity by bill in chancery. The complainants allege that they did not contest the will when it was admitted to probate; and as to the limit of five years for filing the bill, they plead the Civil War, and the laws passed in suspension of the statutes of limitation.

The leading facts, as they appear by the pleadings and evidence, are as follows: John Horn, of Marengo county, Alabama, died March, 1858, leaving a large estate in lands, negroes and personal property; and leaving a widow and six children. Some time about May, 1857, the deceased, John Horn, made a will, which was in existence up to a short time prior to his death. His son, John A. C. Horn, alleges that it was fraudulently purloined and destroyed, either during the decedent's illness or after his death; the daughters allege that their fa-

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

[2] [Affirmed in 17 Wall (84 U. S.) 570.]

ther voluntarily cancelled and destroyed the will before his death. Soon after the death of John Horn, his son procured himself to be appointed administrator ad colligendum, and, by petition in the probate court of Marengo county, set up a paper which he alleged to be a true copy of John Horn's will, with allegations as to its spoliation, etc., and praying that it might be established as his will. The widow and all the children residing in Alabama were duly cited to appear and show cause why the alleged will should not be admitted to probate. As the complainants and McPhail and wife resided in Texas, a notice of the time and place set for the hearing was duly published in a newspaper, as authorized and required by the laws of Alabama. By these laws, any party in interest who wishes to contest a will offered for probate must file in the court allegations in writing, stating the grounds of contestation. Rev. Code, § 1953. It appears, from the record of the proceedings, that two of the daughters, Frances R. Bryan and Elizabeth P. Dumas, afterwards Nabors, in their proper persons, and Mary McPhail with her husband Wm. McPhail, by their attorney, appeared and contested the probate. It does not appear that the others made any legal contestation. The cause was tried by a jury according to the laws of Alabama, and the will was established by their verdict and the judgment of the court on the 13th of September, 1858, and, on the 22d of November following, letters testamentary were issued to John A. C. Horn, as the executor. By the will thus established, the homestead plantation of 720 acres was given to John A. C. Horn, after his mother's decease, and a smaller tract of 208 acres was directed to be sold, and the proceeds divided equally amongst the daughters. The residue of the estate, after charging the daughters with certain advances made to them by the testator in his lifetime, was to be equally divided between all the children. The widow repudiated the will and claimed her dower.

On the 29th of December, 1858, by order of the court, a division of the slaves of testator, seventy-eight in number, was made between his widow and children, by commissioners appointed for the purpose, and upon a valuation then made, the daughters being charged with the respective advances named in the will as made to them in their father's lifetime. They severally, with their husbands, receipted for the slaves which were assigned to them in this division. Wm. A. Lockhart gave a receipt for his wife, as follows: "Received of John A. C. Horn, executor of John Horn, deceased, the following slaves, to wit: (giving their names and values), which is in full of my distributive share of the negro property of said John Horn, deceased, in the division of the same, the commissioners having charged me with $4,400, the amount of the advance men-

tioned in the will of the said John Horn, deceased. W. A. Lockhart, Agent for S. A. Lockhart. Attest: E. R. Showalter." A similar receipt was given by Narcissa Lockhart and her husband, who was then living. At the same time the executor made payments of money to the daughters, which were duly receipted for. The receipt given by Wm. Lockhart was as follows: "Received of John A. C. Horn, executor of John Horn, deceased, two thousand and eighty dollars, in part payment of my claim in the estate of John Horn, deceased, this January 10, 1859. W. A. Lockhart, Trustee of S. A. Lockhart." A similar receipt of the same date and amount was given by Narcissa Lockhart and her husband. In October term, 1859, of the same probate court, Jno. A. C. Horn, the executor, filed a partial account of his administration, including his sales of property and the said division of slaves. Due notice of exhibiting the account was published as required by the laws of Alabama, and William Lockhart and his wife, Charles J. C. Lockhart and Narcissa, his wife, William McPhail and his wife, and Frances L. Bryan, contested the account as to various items thereof. A decree was finally made on the 21st of May, 1860, by which it was declared that the executor had in his hands for distribution $10,783.50, proceeds of the land to be sold and divided among the daughters, and $5,159.21, proceeds of personal property, to be divided among the widow and children in accordance with the will, specifying the amount payable to each. By this account it appeared that Charles Lockhart and Narcissa, his wife, were indebted to the executor a small sum, he having already made them a payment as before stated, and that there was due from him to Wm. Lockhart and Sarah, his wife, $608.09 over and above the payments made to them. This sum was paid, and Wm. Lockhart gave a receipt for the amount, as follows: "Received of Jno. A. C. Horn, executor of the last will and testament of John Horn, deceased, six hundred and eight dollars and nine cents, in full of the amount decreed by the probate court of Marengo county, in May, 1860, in favor of my wife, Sarah A. Lockhart, and myself, in partial settlement made by said John A. C. Horn under said will, May 26, 1860. (Signed) W. A. Lockhart. (Witness) G. W. Colton."

In August, 1860, and January, 1861, citations were issued at the suit of the daughters, or some of them, to call the executor to a final account. There was still a balance in his hands due from James B. Craighead, the purchaser of the real estate, devised for the benefit of the daughters. It had been sold on the 8th of January, 1859, on a credit of twelve months, for $10,400, of which $6,240 had been paid in good money by the purchaser, Craighead, and included in the partial account settled in May, 1860. But there was still a balance due of $4,160 besides interest.

Craighead died, according to Horn's testimony, in June, 1859. His wife took out letters of administration on his estate. By the laws of Alabama, an administrator cannot be sued until after six months from the grant of letters of administration, and judgment cannot be rendered until the expiration of eighteen months therefrom. The whole sum became due in January, 1860, and suit could have been immediately brought and judgment could have been obtained by the month of January, 1861. But the executor did not bring suit, and did not collect the balance until October, 1862, when he was obliged to take Confederate notes worth at that time only about thirty-six cents to the dollar. Of these he received the sum of $5,075.20 in satisfaction of the debt. He kept this money and other money of the estate received in Confederate funds in his hands until March, 1864, when under laws then existing, he deposited $7,900 thereof, as executor, in the Confederate States depository office at Selma, Alabama, and received a certificate entitling him to Confederate States four per cent. bonds to that amount. The receiving of the money by Horn, as executor, in Confederate notes, and the investment of said notes in Confederate bonds, were in strict accordance with laws passed by the legislature of Alabama in November, 1861, and November, 1863, whilst that state was engaged in civil war with the United States. In May, 1864, the final accounts of the executor were passed in the probate court after due publication of notice, and he resigned his executorship in accordance with the laws of Alabama. The final decree recites the fact, that it appeared that the executor had invested the moneys of the estate in his hands in four per cent. Confederate bonds, and approved and confirmed the same, and directed the several shares of the widow and children of the deceased to be paid to them in said bonds. The amount due to the complainants, according to the decree, was, to Wm. Lockhart and Sarah A., his wife, $1,295.78, and to Chas. J. Lockhart and Narcissa, his wife, $1,209.19.

Upon this case the following questions arise: 1. The first question is, as to the jurisdiction of the court. Two of the defendants, McPhail and wife, are of the same state with the complainants. Is that fact fatal to the jurisdiction, these defendants having voluntarily appeared and answered and not having objected to the jurisdiction, and no objection of that kind being taken until the present time, the fact of their residence in Texas, however, appearing in the bill itself? Were this an original question, I should say that the fact of a common state citizenship existing between the complainants and a part only of the defendants, provided the other defendants were citizens of the proper state, would not oust the court of jurisdiction. It certainly would not under the constitution. The case would still be a controversy between citizens of different states. But the strict construc-

tion put by the courts upon the judiciary act is decisive against the jurisdiction; and I am bound by it. Nevertheless, the case is such that the complainant may dismiss his bill as to the obnoxious defendants and hold it as to the others. I will permit him to do so. This should be allowed in all cases where the objection is not made in limine. In this case I do not regard McPhail and wife as absolutely essential parties. The suit is really a suit against John A. C. Horn. Whether the plaintiffs are successful or unsuccessful will make no difference as to the rights of McPhail and wife. They cannot contest the will, for they have once done so. If the complainants succeed in breaking the will they may, perhaps ultimately participate in the advantages of it, if such is the law of Alabama. But it will be their good fortune rather than their right. Any rights which they may have will be unprejudiced by the result of the suit. I will therefore allow the complainants to dismiss the bill as to them.

2. The next question relates to the limitation of five years. The will was admitted to probate on the 13th of September, 1858; this suit was instituted the 15th of November, 1867—a period of nine years, two months and two days; too late by four years, two months and two days, unless the statute was suspended by some law or other cause. The complainant relies on several grounds for a suspension of the limitation: First, the fact that civil war was raging in Alabama and other states from January 11, 1861, when the act of secession was adopted, to the close of hostilities and the restoration of order in the summer or fall of 1865. I do not agree that this was a sufficient ground for the suspension of legal remedies and acts of limitation as between the citizens of the Confederate States, any more than it would be as between citizens of states which adhered to the Federal government. It is a fact that the courts of Alabama were open to all the citizens of the Confederate States, and there was no law to prohibit them from resorting thereto. Were statutes of limitation of the several states, or of any of them, suspended during the war of 1812, because the British forces occupied part of our territory, or because the war was raging in portions of the country? Unless a country is actually occupied by hostile forces, and its laws and courts are suppressed, it would be giving to the courts too large a discretion to allow them to decide when and when not the statutes of limitation are in operation as between their own citizens only. This being a question as to the general effect of a war on remedies and statutes of limitation, I do not feel that I am bound by the decisions of the supreme court of this state.

The next ground relied on by the complainants for a suspension of the statutes is the ordinance of the 21st September, 1865, passed by the constitutional convention assembled at Montgomery under the proclamation of President Johnson, by which it was declared that

in computing the time necessary to create the bar of the statutes of limitation and non-claim, the time elapsing between the 11th of January, 1861, and the passage of that ordinance should not be estimated. Suppose the acts of this convention to have been valid as laws until abrogated and repealed (for which many reasons may be urged), still the whole period of five years had already run when this ordinance was passed; and the effect of it, as applied to this case, was to revive a claim already extinct. This would be to interfere with rights already vested, and would be an unconstitutional application of the law.

The remaining ground for supposing that the limitation of the statute was suspended is the act of congress of June 11, 1864 (13 Stat. 123), by which it is enacted in substance, that whenever during the existence of the Rebellion, resistance to the laws or interruption of the ordinary course of judicial proceedings prevented the prosecution of an action, the statute of limitation should not run. But this statute has in no case been construed to apply to a case arising between citizens of the same section of a country; and if it may ever be so applied, I think it cannot be in this case. For it is not true that the proceedings of the courts here were so interrupted as to prevent the prosecution of suits therein by citizens of any of the Confederate States except for brief periods of time. I am not referred to any other laws affecting this question.

In my judgment, therefore, the statutory limitation for bringing this suit as a means of contesting the validity of the will of John Horn, had expired when the bill was filed, and as to that portion of the relief sought, the bill must be dismissed.

I am further of opinion that the complainants by their own acts were estopped from filing a bill for that purpose. After the will was admitted to probate, they twice received, without objection or protest, dividends of the property of John Horn, founded on the directions of his will, and gave to John A. C. Horn, as executor thereof, acquittances therefor. In this they recognized the will, and recognized John A. C. Horn as the executor thereof, and they cannot now come into a court of equity without any allegation of fraud or concealment, or newly discovered evidence and claim to have the will set aside.

3. But the other ground of relief still remains, namely, the claim of the complainants against the executor for the balance of their legacies. I see nothing in the case to question the accuracy of the amounts found due to the complainants by the decree of May, 1864. The question is whether the defendant can exonerate himself by paying those amounts in Confederate bonds, in accordance with the decree. As a general rule, in my judgment, all transactions, judgments and decrees which took place in conformity with existing laws in the Confederate States between the citizens thereof during the late war, except such as were directly in aid of the Rebellion, ought to stand good. The exception, namely, of such transactions as were directly in aid of the Rebellion is a political necessity required by the dignity of the United States government, and by every principle of fidelity to the constitution and laws of our common country. By this rule the present case must be judged. And by this rule the deposit of the $7,900, money of the estate, in the depository of the Confederate States at Selma, cannot be sustained; it was a direct contribution to the resources of the Confederate government.

The defendant then must be considered chargeable with the Confederate treasury notes which he so deposited. And the next question is, whether he can discharge himself by paying the legacies in such notes? It will be remembered that the greater part of that balance in his hands had become due in January, 1860, and he does not show us when the remainder became due. It is fair to suppose, therefore, that it all became due as early as that date. He could not have obtained judgment against Craighead's estate until January, 1861, it is true. But it does not appear that he could not have collected the money by the exercise of proper diligence without-suit. And if he had brought suit and perfected his judgment by January, 1861, he would still have been in time to have collected the amount due in good money. The complainants were urging him to proceed as early as August, 1860. He was cited to settle up his account, and the citation was repeated in January, 1861.

I cannot but regard the executor as liable for the balance due in lawful money, with interest to the present time. He has not shown sufficient excuse for not collecting the funds of the estate before the war commenced. Had he shown such an excuse, I should have felt bound to charge him only with the value of the funds at the time when he received them, with a reasonable allowance of time for making a settlement.

It may be urged that the decree of the probate court made in May, 1864, is conclusive on the question of the executor's diligence in the collection of the money due the estate. But a careful examination of that decree shows that this question was not passed upon by the court. By the laws then existing, an executor was exonerated by investing his funds in Confederate bonds. Horn having thus invested the funds in his hands, the court did not deem it necessary to look farther, but decreed him to be within the protection of the statutes. That decree, as before shown, cannot avail him in this case. Had the court decided the question of diligence, I should have deemed its decision on that point conclusive.

A decree will be made for the amount found to be due the complainants by the settlement in May, 1864, with lawful interest thereon to the present time.

Affirmed by the United States supreme court. See Horn v. Lockhart, 17 Wall. [84 U. S.] 570.

[NOTE. The appeal was taken by the defendant John A. C. Horn. Mr. Justice Field delivered the opinion of the court. The decision of the circuit court being in favor of the appellant upon the question of the five-years limitation, that question was not considered. The dismissal of the appeal as to the two defendants who were residents of Texas was sufficient to obviate the objection to the jurisdiction of the court. Upon the question whether the investment by the executor of money belonging to the estate in Confederate bonds, and the decree of the probate court approving the investment, is a sufficient answer to the suit for an account, he said: "It would seem that there could be but one answer to this question. The bonds of the Confederate States were issued for the avowed purpose of raising funds to prosecute the war then waged by them against the government of the United States. The investment was therefore a direct contribution to the resources of the Confederate government. It was an act giving aid and comfort to the enemies of the United States; and the invalidity of any transaction of that kind, from whatever source originating, ought not to be a debatable matter in the courts of the United States. No legislation of Alabama, no act of its convention, no judgment of its tribunals, and no decree of the Confederate government, could make such a transaction lawful." 17 Wall. (84 U. S.) 570. The case was again heard in the circuit court upon exceptions to the master's report, filed by Frances L. Bryan and Elizabeth T. Nabors. Decrees were entered in favor of both of the defendants. Case No. 8,446. Subsequently these two defendants brought actions at law against the surety on the executor's bond. There were pleas of statute of limitation and demurrers to the pleas by the plaintiff. The demurrers were sustained. Case No. 2,064.]